(99 South. 579)

No. 24136.

**ANDREWS et al. v. McCREARY LUM-BER CO.**

(March 3, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Husband and wife** ⟐273(12)—**Holder of mortgage on community property may after death of mortgagor's wife proceed against mortgagor alone without opening wife's succession.**

The holder of a mortgage on property belonging to a marital community may, after the death of the mortgagor's wife, foreclose the mortgage by proceeding against the mortgagor alone as the head and master of the community, without opening the succession of the deceased wife or making her heirs or legal representatives parties.

2. **Homestead** ⟐191—**Exemption lost where not claimed before sale.**

If the head of a family entitled to a homestead exemption does not claim the exemption when the home is seized and before it is sold,

the exemption is forever lost, even so far as the dependent wife and minor children or other dependent members of the family are concerned, in view of Const. art. 11, §§ 2 and 3.

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Prentiss B. Carter, Judge.

Action by Hugh Andrews and others against the McCreary Lumber Company, wherein the Fordney-Fassett Company and others are warrantors. From the judgment, plaintiffs appeal. Affirmed.

Sam A. Montgomery, of New Orleans, Osceola H. Carter, of Franklinton (J. D. Dresner, of New Orleans, of counsel), for appellants.

Ott & Johnson, of Franklinton, for appellee Fordney-Fassett Co.

Thos. M. & Jas. T. Burns, of Covington, for appellees Smith & Bulloch.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

O'NIELL, C. J. There are two questions propounded in this case. The first question is whether the holder of a mortgage on community property may foreclose his mortgage by proceeding against the mortgagor alone after the death of his wife, or is it necessary to have the succession of the deceased wife opened and to make the representative of the succession a party defendant in the foreclosure proceeding? The other question is whether a homestead exemption is lost if the head of the family suffers the homestead to be seized and sold, and thereupon moves away with his family, and several years afterwards dies, without having claimed the exemption or protested against the sale.

This is a petitory action, in which the sons and daughters of Erwin Andrews, deceased, sue to recover the half interest, which they claim by inheritance from their deceased mother, in the homestead which belonged to the marital community between their parents. The district court rejected plaintiffs' demand, and they have appealed.

In the year 1902, Erwin Andrews, being in debt to the Bickham Mercantile Company, sold the homestead to the company, as if for cash, but really in satisfaction of the debt. Six months later the mercantile company reconveyed the property to Andrews for the amount of the debt, taking Andrews' promissory note for the amount, $1,561.50, secured by a mortgage and vendor's lien on the property. We say that the note was secured by a vendor's lien because the deed says so; but the validity of the lien, of course, depended upon the genuineness of the sale and resale of the homestead. The basis of this suit is the contention of the plaintiffs that the transaction, purporting to be a sale of the homestead by Erwin Andrews to the mercantile company, and the subsequent transaction purporting to be a sale of the same property by the mercantile company to Andrews, were not intended to convey the title, but were merely pignorative transactions, to secure the debt which Andrews owed to the Mercantile Company. Appellants therefore invoke the doctrine that, inasmuch as the law does not allow a married man to waive the homestead exemption without the written consent of his wife, he cannot deprive her or her dependent children of the exemption by giving a mortgage on the homestead and disguising it in the form of a sale and resale of the property, purporting to create a vendor's lien, against which the homestead exemption could not prevail. The doctrine is well established in our jurisprudence. Stewart v. Sutton, 48 La. Ann. 1073, 20 South. 283; Carroll v. Magee, 120 La. 626, 45 South. 528; Underwood v. Flosheim Bros. Dry Goods Co., 129 La. 450, 56 South. 364; Crain v. Bank of Osyka, 130 La. 945, 58 South. 824; Becker v. Hampton, 137 La. 323, 68 South. 626; Jefferson v. Herold, 144 La. 1064, 81 South. 714.

It could hardly be determined now, as a matter of certainty, whether the transactions between Erwin Andrews and the Bickham Mercantile Company, purporting to transfer and retransfer the Andrews homestead, were intended really to convey the title or merely to secure the debt which Andrews owed to the Mercantile Company. The judgment appealed from, maintaining that the homestead exemption was lost by Andrews allowing the property to be seized and sold without protest, is predicated upon the conclusion of the district judge that the transactions purporting to be transfers of the property to and from the mercantile company were not bona fide sales, and that the mercantile company therefore obtained only an ordinary conventional mortgage—not a vendor's lien—on the homestead. For the purpose of this decision we take the district judge's conclusion in that respect to be correct, which in fact the appellees do not seriously contest.

The wife of Erwin Andrews did not sign a waiver of the homestead exemption, or sign the deed from Andrews to the mercantile company or the deed from the mercantile company to Andrews. He and his wife were then living on the homestead, cultivating it as a farm, and had several small children depending upon them for support. It is not disputed that the homestead was then exempt from seizure for any ordinary debt, or a debt secured only by conventional mortgage. Andrews' wife died in 1903.

In the meantime, the promissory note secured by the mortgage given to the Bickham Mercantile Company had gone into the hands of a firm styled Smith & Bulloch, in the ordinary course of business; and in 1906 Smith & Bulloch foreclosed the mortgage by executory proceedings against Erwin Andrews, individually and alone. The homestead was then seized and sold by the sheriff at public auction to Warren Thomas and Chauncey Z. Williams. They sold to a corporation styled Thomas & Williams Realty Company in 1909. The latter sold to Fordney Fassett in 1910, and he sold to the defendant in this suit.

The public sale made by the sheriff to Thomas and Williams was made for $1,950, being the last and highest bid. The price was paid to the sheriff in cash, and, being, after deduction of the court costs, less than the amount due on the mortgage note with accrued interest, was paid by the sheriff to the seizing creditors, Smith & Bulloch.

Soon after the sheriff's sale, Erwin Andrews moved off of the homestead with his children, without having claimed the exemption, or protested against the seizure or sale. Several years later one of the plaintiffs in this suit, a daughter of Erwin Andrews, returned to the farm and took possession of it, without any authority, so far as this record shows. Erwin Andrews died in 1917 without having protested against the sale of his homestead.

[1] With regard to the first question of law propounded by appellants, it is well settled that the holder of a mortgage on property belonging to a marital community may, after the death of the mortgagor's wife, foreclose the mortgage by proceeding against the mortgagor alone, as the head and master of the community, and without opening the succession of the deceased wife, or making her heirs or legal representatives parties defendant in the foreclosure proceeding. Baird v. Lamee, 23 La. Ann. 424; Rusk, Administrator, v. Warren, Crawford, et al., 25 La. Ann. 314; Hawley v. Crescent City Bank, 26 La. Ann. 230; Ricker v. Pearson's Heirs, 26 La. Ann. 391; Succession of Cason, 32 La. Ann. 792; Succession of Hooke, 46 La. Ann. 353, 15 South. 150, 23 L. R. A. 803; Luria v. Cote Blanche Co., 114 La. 385; 38 South. 279; Simpson v. Bulkley, 140 La. 589, 73 South. 691, L. R. A. 1917C, 494; and Simpson v. Busch-Everett Co., 140 La. 609, 73 South. 698.

[2] The other proposition on which appellants rely is also untenable. If the head of a family, entitled to the homestead exemption, does not claim the exemption when the homestead is seized and before it is sold, the exemption is forever lost, even so far as the dependent wife and minor children or other dependent members of the family are concerned. Kuntz v. Baehr, 28 La. Ann. 90; Gilmer v. O'Neal, 32 La. Ann. 979; Fruge v. Fulton, 120 La. 750, 45 South. 595; and Cunningham v. Steidman, 133 La. 44, 62 South. 346. The decision in Jackson v. Hodges, 141 La. 993, 76 South. 174, L. R. A. 1917F, 732, is not quite in accord with the previous decisions on the subject, but is not out of line with the doctrine which we have stated. In the case cited, the debtor, being the head of a family, and entitled to the exemption, and being too poor to litigate, made a formal protest at the sheriff's sale. The property sold was not a homestead, but consisted of a team of mules, a wagon, a hog, 78 bushels of corn, and a mowing machine, all of which were exempt from seizure under the homestead provisions of the Constitution. The exempted articles were bought by the seizing creditor at the sheriff's sale, against the formal protest of the debtor. His suit to recover the exempted property or its value was brought within four months after the sheriff had sold it. In the opinion rendered in the case, it was virtually conceded that the plaintiff in the case would have had no cause or right of action to recover the property or its value if he had not formally protested at the sale, or if the property had been transferred to some one other than the creditor who had had it seized. If the circumstances which we have mentioned are not enough to distinguish this case from Jackson v. Hodges, that decision ought to be overruled. Much that was said in construing the language of the Constitution forbidding the courts to execute a judgment or decree against a home-

stead cannot be reconciled with what was said afterwards, in Jefferson v. Gamm, 150 La. 372 on page 380, 90 South. 682, on page 685. We refer particularly to the statement, viz:

"It is true article 245 of the Constitution declares that no court or ministerial officer shall have jurisdiction or authority to enforce any judgment, execution, or decree against property exempted as a homestead, except for the collection of a debt representing the purchase price of the property or a debt of any other of the five classes enumerated in article 245. What the article means is that no court or ministerial officer shall have jurisdiction or authority to seize a homestead that has been judicially declared exempt from seizure for the debt attempted to be collected. Of course, the district courts have jurisdiction to determine whether any particular debt is or is not one for which the homestead may be seized and sold; and, of course, the district courts have jurisdiction to determine whether any claimant of a homestead exemption possesses the qualifications under which alone article 244 of the Constitution allows the exemption. Those questions are presented, and have to be decided, in every case in which the homestead exemption is claimed."

The provision in article 245 of the Constitution of 1913 (and of 1898) that no court or ministerial officer should ever have jurisdiction or authority to enforce any judgment or decree against property exempted as a homestead, etc., has been retained in the last paragraph of the second section of article 11 of the Constitution of 1921. It is not reasonable to suppose that the authors of this provision intended that every land title emanating from a sheriff's sale for debt should stand always exposed to attack upon the ground that the land was a homestead, exempt from seizure when it was sold, and that therefore the court whose decree was executed was without jurisdiction.

One reason why a sheriff's sale of a homestead, in foreclosure of a mortgage or in execution of a judgment, does away with the homestead exemption, if the exemption be not claimed before the sale is made, is that

according to section 3 of article 11 of the Constitution, the right to sell a homestead is not affected by the provisions granting the exemption. Erwin Andrews' mortgaging his homestead, and afterwards suffering it to be sold in foreclosure of the mortgage, was not worse for the dependent members of his family than an outright sale of the homestead would have been.

The judgment appealed from is affirmed, at appellants' cost.